United States Courts
Southern District of Texas
FILED

AUG 0 4 2004

Michael N. Milby, Clerk

MH

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| PETER CLARK<br>Plaintiff<br>VS.<br><br>CORNELL COMPANIES, INC.;<br>CORNELL COMPANIES, INC., d/b/a<br>REID COMMUNITY RESIDENTIAL FACILITY;<br>CORNELL COMPANIES, INC., d/b/a<br>REID COMMUNITY CORRECTIONS<br>CENTER;<br>Defendants | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO.<br><br>H-04-3121<br><br><br><br><br>JURY TRIAL DEMANDED |

**PLAINTIFF'S ORIGINAL COMPLAINT**

**COMES NOW, PETER CLARK ("CLARK"**) in the above-styled cause, and files this his Original Complaint against **CORNELL COMPANIES, INC.; CORNELL COMPANIES, INC. d/b/a REID COMMUNITY RESIDENTIAL FACILITY; and CORNELL COMPANIES, INC. d/b/a REID COMMUNITY CORRECTIONS CENTER ("CORNELL")**, based on employment discrimination under the federal law provisions of the Civil Right's Act of 1871, 42 U. S.C. § 1981 ("Section 1981"), the Civil Right's Act of 1964, 42 U.S.C. §2.000e et seq. ("Title VII). Clark would respectfully show unto the Court as follows:

I.

PARTIES

1. **Plaintiff, PETER CLARK**, is a natural person residing in Houston, Harris County, Texas.

2. **Defendant, CORNELL COMPANIES, INC.,** is a corporation doing business in the State of Texas and service can be had on its registered agent, C.T. Corporation System at 1021 Main St. Ste 1150, Houston, Texas 77002.

3. **Defendant, CORNELL COMPANIES, INC., d/b/a REID COMMUNITY RESIDENTIAL FACILITY** is a corporation doing business in the State of Texas and service can be had on its registered agent, C.T. Corporation System at 1021 Main St. Ste 1150, Houston, Texas 77002.

4. **Defendant, CORNELL COMPANIES, INC., d/b/a REID COMMUNITY CORRECTION CENTER** is a corporation doing business in the State of Texas and service can be had on its registered agent, C.T. Corporation System at 1021 Main St. Ste 1150, Houston, Texas 77002.

II.

JURISDICTION AND VENUE

5. Clark is an African-American male resident of Harris County, Texas.

6. Cornell is an "employer," as Title VII defines that term.

7. On or about January 29, 2004, Clark filed a Charge of Discrimination with the local office of the United States Equal Employment Opportunity Commission ("EEOC") Charge Number 330-2004-02103 which alleged that Cornell subjected him to different

terms and conditions of employment based on his race and retaliated against him for participating in an investigation conducted by the Occupational Safety & Health Administration ("OSHA") and retaliated against him for filing a Charge of Discrimination with EEOC.

8. On or about May 6, 2004 Clark received a "Right to Sue" letter issued by EEOC for Charge Number 330A-2004-02103.

9. Venue lies in the United States District Court for the Southern District of Texas, Houston Division, pursuant to 28 U.S.C. §1391.

10. The Court has jurisdiction of this matter pursuant to 28 U.S. C. §1331 and §1343.

## III.

## ACTS OF AGENTS

12. Whenever in this Complaint it is alleged that Cornell or any entity associated with it, performed any act or thing, it is meant that Cornell or its agents, servants, employees, or representatives performed such act or thing, and at the time such act or thing was done, it was done with the full authorization or ratification of Cornell and was done in the normal and routine course and scope of employment as those entities, officers, agents, servants, employees or representatives, unless otherwise specified.

## IV.

## STATEMENT OF FACTS

13. Cornell is a private provider of corrections, treatment and educational services outsourced by federal, state and local government agencies. Cornell provides services for adults and juveniles, including incarceration and detention and serves as a halfway house for individuals leaving incarceration.

14. Clark commenced his employment with Cornell at its Reid Facility in Houston, Texas as a Program Coordinator in February 2003. Clark supervised approximately nine female employees and one male.

15. Upon Clark's commencement with Cornell, his supervisor, Fran Hopkins ("Hopkins"), approached Clark and informed him that his primary duty was to bring discipline, professionalism and law and order to Building #2, the building where the Texas Department of Criminal Justice ("TDJC") case managers work. Hopkins informed Clark that the current employees acted ignorant, were wild and out of control, dressed improperly, lied, were "ghetto" and retaliated against and severely mistreated residents.

16. When Clark assumed his duties as Program Director he immediately began an assessment of those individuals under his supervision. Clark observed that the employees had adequate technical knowledge of their duties and responsibilities but lacked basic professionalism and workplace decorum. Hopkins admitted that Clark's group was very unstructured.

17. As Clark began to execute his duties as Program Director it became abundantly clear that management merely wanted Clark to be the fall guy whenever directives

came from upper management. When Clark would approach his supervisor and others in upper management about ways to improve the facility he was met with strife and resistance. Clark began to issue memorandums to his case managers to ensure that they were following company policy and that inmates were being treated properly. When Clark looked for support from upper management to enforce the company's policies none was forthcoming. Clark was subsequently left to defend himself against complaints by his case managers for simply trying to ensure that Cornell's polices and procedures were adhered to.

18. Shortly after Clark began to issue the memorandums concerning Cornell's policies and procedures and began enforcing them with disciplinary action – by issuing written Corrective Action Forms for those case managers that were violating Cornell's policies, Clark began to be harassed and retaliated against by his case managers in the form of a bogus allegation of sexual harassment (which was subsequently recanted by the accuser), complaints about his job performance and other frivolous matters, which were unfounded and not supported by any tangible evidence.

19. Due to the fact that Clark was continuously having to defend himself from false and malicious accusations of misconduct, and that upper management would offer no support, or investigate the allegations objectively, Clark forwarded to the attention of Cornell's Human Resource Director, Yolanda Mesa ("Mesa") a fifty-seven (57) page document with exhibits. The complaint/report detailed many acts of misconduct that was taking place at the Reid Facility, how he tried to ensure that Cornell's polices and procedures were being followed and how he received no assistance by management at the Reid Facility and how residents were being treated unprofessionally and

inappropriately. Clark further alleged that he was being harassed and treated unfairly by the Reid Facility's management because of his race and gender. Clark received no response from Mesa or anyone else in Cornell's management.

20. On or about September 9, 2003 Building #2 experienced a hazardous chemical release as a result of insecticide and diesel fuel being mixed together. Several employees became seriously ill and required hospitalization. Allegedly Hopkins informed hospital personnel that the employees were only exposed to bleach and that they should not be concerned. Some employees relied on Hopkins statements and were released prematurely.

21. On September 11, 2003 Clark instructed a case manager to contact OSHA because he believed that individuals were at risk because of their exposure to the hazardous materials and that the management at the Reid Facility would cover up the incident and continue their neglect of serious and potentially life-threatening incidents.

22. Shortly thereafter OSHA conducted an inspection. On November 19, 2003 OSHA issued citations against the Reid Facility for the exposure, failing to have an Exposure Control Plan, failing to have available Hepatitis B vaccination for employees who were exposed to hazardous chemicals, failing to have appropriate documentation for employees with an occupational exposure, failing to have a chemical inventory list of hazardous chemicals known to be present and failing to have a material safety data sheet ("MSDS") for each hazardous chemical which was being used at the Reid Facility during that time.

23. On December 30, 2003 Clark faxed a request to Mesa requesting that she return his 57-page complaint/report because she had not responded to it, and apparently was

not going to address the numerous problems cited therein.

24. On December 31, 2003 Clark had a meeting with Joe Asuncion, the Facility Director, to discuss an incident that occurred when Rudy Marlbrough, Chief of Security, used vulgarity towards a female case manager. Because Clark sided with the case manager against a member of upper management, and in retaliation for addressing many infractions of company policy and state and federal laws by the Reid Facility, Clark was administratively suspended.

25. On February 5, 2004, Clark met with Paul Doucette, Vice President of Cornell. During the meeting Doucette accused Clark of participating in an undercover investigation by a local T.V. station. The T.V. undercover investigation televised residents of the Reid Facility using drugs in a dormitory, residents having crack cocaine pipes in their possession, residents receiving what purported to be contraband from individuals outside the fence of the facility and residents being unaccounted for by staff members. Doucette accused Clark of allowing the undercover news personnel into the facility.

26. On February 9, 2004, Clark had a meeting with Cornell's highest-ranking individuals, Tom Jenkins – President and Chief Operating Officer; Pat Perrin – Senior Vice President and Chief Administrative Officer; Paul Doucette; and Mark Thompson – Western Region Vice President (via teleconference) to discuss the problems at the Reid Facility and how Clark had been treated as an employee. The Cornell officials invited Clark back the following day under the guise of trying to resolve the problems addressed during the meeting the day before.

27. On February 10, 2004 Clark meet with Keith Furman - Regional Director and

Marianne Bonetati – in house lawyer for Cornell, to allegedly mediate Clark's grievances. At the meeting Clark was handed a termination letter and an *Agreement – Release of Claims, Covenant not to Sue, and Older Workers Act Waiver* ("settlement agreement"). Allegedly Furman and Bonetati surreptitiously tape-recorded the meeting to claim Clark was attempting to extort a settlement out of it. Clark never made reference to any settlement amount.

## V.

## DISCRIMINATION BASED ON RACE and GENDER

28. Clark repeats and realleges by reference each and every allegation contained in Paragraphs 12 through 27 and incorporates the same herein as though fully set forth.

29. At all relevant times Clark was a member of a protected class, was subjected to discrimination and retaliation based on his race and gender and the discrimination affected a term or condition of his employment. Cornell knew or should have known of such discrimination. Cornell's conduct constitutes discrimination and unlawful employment practices under the Act. Specifically:

(1) Clark is a member of a protected class;

(2) Clark sought and was qualified for his employment position;

(3) He was terminated; and

(4) Instead Cornell hired or promoted a person not in Clark's class, or retained those having comparable or lesser qualifications not in his protected class, or that employees outside of the protected class were more favorably treated.

30. Cornell had knowledge of the conduct and behavior set forth above, and as such Cornell had the power and authority to prevent such conduct and behavior but neglected to do so. Cornell conspired against Clark and invidiously discriminated and retaliated against him because of his gender and race.

31. Despite knowledge of the above described illegal policy and practices, the supervisory and policy making officers and officials of Cornell have not taken steps to terminate such practices, have not disciplined or otherwise properly supervised the individuals engaged in such practices, have not effectively trained personnel with regard to the proper constitutional and statutory limits on the exercise of their authority, and have instead sanctioned the policy and practices described above through their deliberate indifference to the effect of such policy and practices upon the constitutional rights of Clark.

## VI.

## RETALIATION

32. Clark repeats and realleges by reference each and every allegation contained in Paragraphs 12 through 31 and incorporates the same herein as though fully set forth.

33. Clark can establish a prima facie case of retaliation by demonstrating:

A. He engaged in an activity protected by Title VII;

B. That an adverse employment action occurred; and

C. That a causal link existed between the protected activity and the adverse action.

34. Clark engaged in an activity protected by Title VII by:

1. Opposing practices made unlawful by Title VII; and/or

2. Made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under Title VII.

35. Shortly after Clark assisted OSHA with its investigation Cornell and its employees began to retaliate against him and subsequently terminated him. Additionally, after Clark reported that he was being discriminated against based on his race and gender, management at the Reid Facility engaged in systematic measures to harass and intimidate him into resigning from Cornell.

36. On January 29, 2004 Clark filed his Charge of Discrimination against Cornell. On February 9th and 10th Cornell attempted to resolve Clark's claims of discrimination, harassment and retaliation. Due to the fact that Cornell was unable to resolve Clark's claims, Cornell terminated him on February 10, 2004.

**VII.**

**NEGLIGENT SUPERVISION**

37. Clark repeats and realleges by reference each and every allegation contained in Paragraphs 12 through 36 and incorporates the same herein as though fully set forth.

38. Cornell has a duty to properly train, supervise and discipline its employees and supervisors not to discriminate against employees that fall under the protection of Title VII.

39. Cornell has a duty to properly train its employees in diversity issues so that its employees are not insensitive or intolerant of their minority co-workers.

40. Cornell has a duty to supervise and discipline its employees when they violate or engage in discriminatory and harassing conduct towards minority groups.

41. Cornell failed to properly supervise and discipline it employees that discriminated against Clark based on his race and gender.

## VIII.

## NEGLIGENT RETENTION

42. Clark repeats and realleges by reference each and every allegation contained in Paragraphs 12 through 41 and incorporates the same herein as though fully set forth.

43. Cornell is liable for negligently retaining employees that it knew or should have known engaged in harassing and discriminatory conduct.

44. Several of the employees of Cornell have previously harassed other employees based on a Title VII protected right and were allowed to remain as employees. Some employees that engaged in such unlawful, harassing and discriminatory conduct were even promoted and given positions of authority.

## IX.

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

45. Clark repeats and realleges by reference each and every allegation contained in Paragraphs 12 through 44 and incorporates the same herein as though fully set forth.

46. Cornell by and through the conduct alleged above, willfully, maliciously, and intentionally inflicted emotional distress upon Clark, to his general damage and detriment. Cornell's conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible grounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community.

47. By failing to protect Clark from the continuing harassment, discriminatory behavior and other offensive conduct of Cornell's employees described herein, Cornell further abused its special position as Clark's employer, which vested in it, substantial power to control his work environment and remedy any discriminatory conduct and behavior perpetrated against him.

48. As a direct and proximate result of Cornell's actions, Clark has suffered and will continue to suffer extreme mental anguish and emotional distress, which he has incurred, and will continue to incur, long into the future.

## X.

## PUNITIVE DAMAGES

49. Clark repeats and realleges by reference each and every allegation contained in Paragraphs 12 through 48 and incorporates the same herein as though fully set forth.

50. Clark was discriminated and retaliated against because of his race and gender. The actions and omissions of the Cornell were intentional and exhibited oppression, malice, gross negligence, willful or wanton misconduct, and a reckless disregard for Clark's civil rights.

51. Cornell's conduct described herein was malicious and oppressive, and done with a conscious disregard of Clark's basic human and civil rights. The acts of Cornell were performed with the knowledge of an employer's economic power over its employees. Cornell through its officers, managing agents, and supervisors, authorized, condoned and ratified the unlawful conduct of its employees in this action. Consequently, Clark is entitled to punitive damages from Cornell.

52. Clark asserts this is a proper case for punitive damages in order to penalize

Cornell and serve as an example to others similarly situated that such conduct will not be tolerated in a civil society. Because Cornell's conduct was entirely without care or consideration of Clark, that they knew or should have know could be detrimental to his ability to function in society, Cornell's conduct can only be characterized as a conscious disregard of the law, constituting malice, for which Clark hereby sues.

53. Cornell's conduct evidenced such a callous disregard for its duties of ordinary care, good faith, fiduciary obligations and fidelity owed to the as to raise a belief that the acts and omissions set forth above were the result of premeditation. Whether considered separately or together, the longevity, scope and severity of Cornell's failures, omissions and consciously indifferent actions were undertaken by it without any regard to Clark.

54. Further, the evidence will show that Cornell has previously engaged in such harassing and discriminatory conduct against other employees at its facilities.

55. The award of exemplary damages would serve not only to deter Cornell from again breaching its obligations to protect its employees from discriminatory and retaliatory conduct, but would also serve as a warning or deterrent to others similarly situated. Accordingly, Clark hereby sues for exemplary damages in an amount in excess of the minimum jurisdictional limits of the Court.

## XI.

## ATTORNEY FEES

56. Clark repeats and realleges by reference each and every allegation contained in Paragraphs 12 through 55 and incorporates the same herein as though fully set forth.

57. As a result of the foregoing acts and conduct, Clark has retained the services of the undersigned attorney, and agreed to pay a reasonable sum for the necessary services of such attorney. Accordingly, Clark seeks and is entitled to reasonable attorney's fees.

**WHEREFORE PREMISES CONSIDERED**, Clark prays that the Cornell be cited to appear and answer herein, and that upon trial of this cause, Clark have and recover judgment from Cornell, as follows: actual damages in a sum in excess of the minimum jurisdictional limits of the Court; lost wages, diminished earning capacity, mental anguish and emotional distress; punitive damages; reasonable attorneys fees; pre-judgment interest as provided by law and interest on the judgment at the legal rate; costs of court; costs of appeals; and such other relief to which Clark may be justly entitled.

Respectfully submitted,

**MIDANI & ASSOCIATES, P.C.**

Mark Q. Midani
State Bar No. 14013250
5433 Westheimer, Suite 620
Houston, Texas 77056
(713) 871-1001
(713) 871-1054 Fax

**ATTORNEY FOR THE PLAINTIFF**